UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK                           For Online Publication Only
----------------------------------------------------------X
BARRY SHARF,

                Appellant,

                                         **MEMORANDUM & ORDER**
     -against-                                      14-cv-7320 (JMA)

BC Liquidating, LLC,

                Appellee.
----------------------------------------------------------X

**AZRACK, United States District Judge:**

       Appellant Barry Sharf, a Chapter 7 debtor, appeals an order ("the Order") of the Bankruptcy Court (Grossman, J.) denying his motion to dismiss an adversary proceeding filed against him by Appellee BC Liquidating LLC ("BC Liquidating") in a Chapter 11 bankruptcy, which concerns a different debtor. Sharf argues that BC Liquidating's filing of the adversary proceeding violated 11 U.S.C. § 362 ("§ 362"), which automatically stays the commencement or continuation of judicial, administrative or other proceedings against a debtor. (Order, ECF No. 1-3.) For the reasons set forth below, the Order is affirmed.

## I. BACKGROUND

**A. BCF's Chapter 11 Case**

       On March 13, 2012, BC Funding LLC d/b/a BankCard Funding ("BCF"), a business that funded merchants by purchasing their future credit card receipts at a discount, filed a voluntary petition for relief under Chapter 11 ("BCF's Bankruptcy"). (BCF's Ch. 11 Pet., ECF No. 18-7.) Appellant Barry Sharf was the CEO and manager of BCF. (Id.) Appellee BC Liquidating was created for the benefit of BCF's creditors to liquidate and distribute the assets of BCF's bankruptcy estate, including certain causes of action that are at issue here. (Order at 2.)

       BCF's Bankruptcy is before the Honorable Robert E. Grossman.

1

**B. Sharf's Chapter 7 Case**

On April 12, 2013, Sharf petitioned for bankruptcy relief under Chapter 7 ("Sharf's Bankruptcy"). (Sharf's Ch. 7 Pet., ECF No. 18-10.) As a Chapter 7 debtor, any judicial, administrative or other proceeding against Sharf was automatically stayed under § 362.

Sharf's Bankruptcy is also before Judge Grossman.

On November 11, 2013, BC Liquidating filed a proof of claim in Sharf's Bankruptcy, seeking $10,000,000 for, among other things, gross mismanagement and fraud perpetrated by Sharf when he was BCF's CEO and manager. (BC Liquidating's Proof of Claim, ECF No. 9.)

**C. Adversary Proceedings filed by BC Liquidating**

On March 13, 2014, BC Liquidating commenced an adversary proceeding against Sharf in Sharf's Bankruptcy ("Sharf Adversary Proceeding") asserting, in essence and among other things, that because of Sharf's malfeasance and fraud: (1) Sharf's debt to BC Liquidating should not be discharged under 11 U.S.C. § 727(a); (2) Sharf's debt was nondischargeable pursuant to 11 U.S.C. § 523(a); and (3) alternatively, Sharf was liable to BC Liquidating for certain preferential and fraudulent transfers.[1] (Sharf Adv. Pro. Compl., ECF No. 18-9.) BC Liquidating simultaneously filed the exact same complaint as an adversary proceeding in BCF's Bankruptcy ("BCF Adversary Proceeding"). (BCF Adv. Pro. Compl., ECF No. 18-1.) BC Liquidating also commenced another adversary proceeding in the BCF Bankruptcy, asserting, inter alia, a RICO claim against individuals and entities that allegedly acted in concert with Sharf ("RICO Adversary Proceeding"). (RICO Compl., ECF No. 18-8.) Sharf was not named as a defendant in the RICO Adversary Proceeding. (Id.)

BC Liquidating asserts that it commenced the BCF Adversary Proceeding as a prophylactic measure to preempt a potential motion by the RICO defendants seeking dismissal of

---
[1] In connection with certain claims, BC Liquidating also expressly sought damages.

2

the RICO Adversary Proceeding for failure to join Sharf— a possibly indispensable party in that proceeding. (BC Liquidating Mem. of Law in Opp. to Mot. to Dismiss at 9–10, ECF No. 9.)

Sharf moved to dismiss the BCF Adversary Proceeding, arguing, among other things, that BC Liquidating intentionally violated the automatic stay under § 362 by commencing that proceeding and, consequently, the BCF Adversary Proceeding was null and void. (Sharf Mot. to Dismiss at 8–10, ECF No. 1-2.)

**D. The Order**

On December 1, 2014, the Bankruptcy Court denied Sharf's motion, finding, among other things, that BC Liquidating's commencement of the BCF Adversary Proceeding did not violate § 362. (Order at 3–4.) The Bankruptcy Court held that BC Liquidating did not violate the automatic stay because any determination as to any pre-petition "liability [against Sharf] would merely be ancillary to the claims allowance process" in Sharf's Bankruptcy. (Id.) The Bankruptcy Court reasoned that if Sharf objected to the proof of claim BC Liquidating filed in Sharf's Bankruptcy, then a trial on the merits of that claim would mirror the allegations in the BCF Adversary Proceeding. (Id.) If, on the other hand, Sharf did not object to BC Liquidating's proof of claim, then a determination as to whether that claim was dischargeable in the Sharf Adversary Proceeding would involve some, if not all, of the allegations in the BCF Adversary Proceeding. (Id.) Either way, the exact same claims against Sharf in the BCF Adversary Proceeding would almost certainly be litigated first in Sharf's Bankruptcy. Additionally, the Bankruptcy Court was "sympathetic to [BC Liquidating's] argument that the claims against the RICO defendants may be vulnerable for failure to join a necessary party if an affirmative claim for these violations were not made against Sharf." (Id.)

On December 15, 2014, Sharf appealed the Order.

## II. DISCUSSION

### A. Subject Matter Jurisdiction

At the outset, BC Liquidating claims that the Order was not a final order and thus could not be appealed on an interlocutory basis without leave of court. See 28 U.S.C. § 158(a)(1) & (3). Sharf, on the other hand, contends that the Order completely resolved the discrete issue of whether BC Liquidating violated § 362, and thus constitutes a final order.

District courts have jurisdiction to hear appeals from "final judgments, orders, and decrees." 28 U.S.C. §158(a)(1). Bankruptcy orders are appealable as final orders if they "'finally dispose of discrete disputes within the larger case.'" In re Johns-Manville Corp., 824 F.2d 176, 179 (2d Cir. 1987) (quoting In re Saco Local Dev. Corp., 711 F.2d 441, 444 (1st Cir. 1983)). Finality in bankruptcy proceedings is more flexible than in ordinary civil litigation "[b]ecause bankruptcy proceedings often continue for long periods of time, and discrete claims are often resolved at various times over the course of the proceedings." In re Chateaugay Corp., 880 F.2d 1509, 1511 (2d Cir. 1989).

The portion of the Order addressing Sharf's motion to dismiss the BCF Adversary Proceeding as a violation of § 362 constituted a final order because it resolved the discrete issue of whether BC Liquidating violated the automatic stay, and nothing in the record suggests that the Bankruptcy Court will revisit that determination. See In re Sonnax Indus. Inc., 907 F.2d 1280, 1283 (2d Cir. 1990) (explaining that orders lifting the automatic stay are final because "the issue of whether the litigation in question may proceed has been resolved and because an immediate appeal by the trustee or debtor is necessary if there is to be appellate review at all").

This case bears some resemblance to In re Quigley Co., Inc., 676 F.3d 45, 51 (2d Cir. 2012). There, the Second Circuit addressed whether the bankruptcy court's decision concerning the applicability of a stay issued under 11 U.S.C. §§ 105(a) & 362(a) to a series of lawsuits

4

against the debtor's parent company constituted a final order. The Second Circuit held that the bankruptcy court's decision was a final order because the decision "clarified that a stay applied to a particular party" and, thus, was "the equivalent of a decision from that court on a motion seeking relief from a stay." Id. at 51. Similarly, here, the Order determined the applicability of § 362(a) to BC Liquidating's commencement of the BCF Adversary Proceeding, and was, thus, final and appealable under 28 U.S.C. § 158(a)(1).[2]

**B. Standing**

BC Liquidating argues that Sharf does not have standing to assert an automatic stay violation because: (1) only the trustee in Sharf's Bankruptcy Case may do so; and (2) in any event, Sharf has not suffered any injury as result of BC Liquidating's commencement of the BCF Adversary Proceeding. Sharf contends that he has standing because one of the purposes of the automatic stay is to protect the debtor personally and BC Liquidating deprived Sharf of that protection by filing the BCF Adversary Proceeding.

Sharf has standing. The fact that Sharf must answer and otherwise defend himself in the BCF Adversary Proceeding when the automatic stay arguably relieves him of having to do so sufficiently alleges an injury that is "fairly traceable to [BC Liquidating's] allegedly unlawful conduct." Allen v. Wright, 468 U.S. 737, 751 (1984), abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, 134 S. Ct. 1377 (2014). Moreover, Sharf's injury can be redressed by a finding that BC Liquidating's conduct constituted a violation of the automatic stay since such a finding would nullify the BCF Adversary Proceeding against Sharf. See id.; see also Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 527 (2d Cir. 1994) (noting that "any proceedings or actions described in section 362(a)(1) are void and without vitality if they occur

---

[2] Because the Court concludes that the section of the Order concerning the automatic stay was a final order, the Court does not address BC Liquidating's argument that Sharf needed leave of court to file the instant appeal.

5

after the automatic stay takes effect"). Although any injury to Sharf resulting from the BCF Adversary Proceeding may be slight given that he must defend against the exact same allegations in the Sharf Adversary Proceeding brought by BC Liquidating, the burden of responding separately to the allegations in the BCF Adversary Proceeding nonetheless confers standing on Sharf.[3]

**C. Automatic Stay**

This Court reviews the Bankruptcy Court's legal conclusions regarding the automatic stay de novo. See In re Weber, 719 F.3d 72, 75 (2d Cir. 2013).

The automatic stay serves several principal purposes:

> (1) "provid[ing] the debtor with 'a breathing spell from his creditors,'" Teachers Ins. & Annuity Ass'n of Am. v. Butler, 803 F.2d 61, 64 (2d Cir. 1986) (quoting legislative history);
>
> (2) "allow[ing] the bankruptcy court to centralize all disputes concerning property of the debtor's estate in the bankruptcy court so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas," In re Ionosphere Clubs, Inc., 922 F.2d 984, 989 (2d Cir. 1990); and
>
> (3) "preserv[ing] the property of the debtor's estate for the benefit of all the creditors."

In re Prudential Lines Inc., 928 F.2d 565, 573 (2d Cir. 1991).

"'The reach of the automatic stay is limited by its purposes.'" Id. (quoting Price & Pierce Int'l, Inc. v. Spicers Int'l Paper Sales, Inc., 50 B.R. 25, 26 (S.D.N.Y. 1985)). Consistent with that principle, although § 362 on its face appears to enjoin proceedings in bankruptcy court, courts have consistently held that:

---

[3] Notably, if Sharf prevails on his claim that BC Liquidating willfully violated the automatic stay by filing the BCF Adversary Proceeding, he would be entitled to seek attorneys' fees and costs expended in connection with that aspect of his motion to dismiss. See 11 U.S.C. § 362(k) ("[A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees . . . .").

> Any action . . . to collect money . . . or to assert a prepetition claim against the debtor which would otherwise be enjoined by 11 U.S.C. § 362(a) if initiated in any other context, is not subject to the automatic stay if commenced in the bankruptcy court where the debtor's bankruptcy case is pending.

In re Atreus Enterprises, Ltd., 120 B.R. 341, 346 (Bankr. S.D.N.Y. 1990) (citations omitted); see In re Transcolor Corp., 296 B.R. 343, 358 (Bankr. D. Md. 2003) (citing cases). Under this "home court" rule, courts have refused to find a violation of § 362 in these circumstances because application of the automatic stay to litigation in the bankruptcy court where the debtor's case is pending does not serve any of the purposes underlying the automatic stay. On the contrary, allowing such litigation to proceed "centralizes all actions against the debtor in one forum under the control of one court and thereby aids the home court in protecting the debtor and creditors and in efficiently administering the estate." In re Bird, 229 B.R. 90, 95 (Bankr. S.D.N.Y. 1999). Moreover, allowing such litigation to proceed does not diminish the debtor's "breathing spell" from creditors because commencing a proceeding in the bankruptcy court where the debtor's case is pending is "the functional equivalent of filing a proof of claim against the bankruptcy estate." Id. As one court has noted:

> Any impairment of the breathing spell inherent in requiring the debtors to defend proceedings in the bankruptcy court is illusory. The breathing spell is not, as the debtor suggests, absolute, because even during the initial stages of a case, a creditor may take certain actions, such as moving for relief from the stay or filing a complaint to object to the debtor's discharge or the discharge of a debt, which the debtor may be required to oppose.

In re N. Coast Vill., Ltd., 135 B.R. 641, 644 (B.A.P. 9th Cir. 1992).

For all of these reasons, applying the automatic stay to the BCF Adversary Proceeding "would be illogical and would not serve the purposes underlying the automatic stay."[4] Id. at 643. Thus, under the 'home court" rule, there was no violation of the automatic stay.

Sharf objects to applying the "home court" rule here because the cases cited by BC Liquidating concerning that rule involve proceedings commenced against a debtor in the context of the debtor's own bankruptcy. Here, in contrast, BC Liquidating filed an adversary proceeding against Sharf in BCF's bankruptcy case.

Sharf's argument elevates form over substance. The BCF Adversary Proceeding complaint is the exact same complaint filed against Sharf in his own bankruptcy case. The primary aim of these identical complaints is to recover monies Sharf allegedly purloined from BCF by having the Bankruptcy Court not discharge Sharf's debts to BCF.[5] Furthermore, the BCF Adversary Proceeding is before Judge Grossman, who is also presiding over Sharf's Bankruptcy. As a result, Judge Grossman is ideally situated to protect the interests of Sharf and BCF, and to efficiently administer their respective estates. See In re Bird, 229 B.R. at 95.

Contrary to Sharf's suggestion, nothing in In re Worldcom, Inc., 325 B.R. 511 (Bankr. S.D.N.Y. 2005), dictates a different result. In Worldcom, the creditor, whose own bankruptcy was pending in Delaware, moved to retroactively lift the automatic stay in the Worldcom bankruptcy, which was pending in the Southern District of New York, to allow the creditor to

---

[4] Sharf suggests that BC Liquidating should have sought relief from the automatic stay before filing the BCF Adversary Proceeding. Given the purposes underlying the automatic stay, the Court fails to see why it was necessary for BC Liquidating to jump through that additional hoop or how it would have made a difference in this case. The BCF Adversary Proceeding asserted the same claims as the Sharf Adversary Proceeding, and was, as Judge Grossman recognized, filed as a proceeding related to the BCF Bankruptcy in an apparent attempt to preempt a possible motion to dismiss the RICO Adversary Proceeding.

[5] Any determination concerning dischargeability will, in turn, presumably happen primarily or exclusively in the context of Sharf's Bankruptcy. As to BC Liquidating's remaining claims, which were pleaded in the alternative, Judge Grossman has already indicated that those claims will be stayed until resolution of BC Liquidating's dischargeability claims. (Order at 4 n.2.) Those claims will also presumably be resolved by Judge Grossman primarily or exclusively in the context of Sharf's Bankruptcy.

8

prosecute preferential transfer actions that had been filed against the Worldcom debtors in the creditor's Delaware bankruptcy proceeding. Id. at 515. Among other things, the court chastised the creditor for not first seeking relief from the automatic stay in the Worldcom bankruptcy before intentionally violating that stay, and ultimately refused to retroactively lift the automatic stay. Id. at 518–23. Unlike Worldcom, the BCF Adversary Proceeding was filed in the same bankruptcy court where Sharf's bankruptcy is pending. On this basis alone, Worldcom is inapposite.

Finally, Sharf contends that affirming the Order means that, irrespective of § 362, any debtor can sue any other debtor who has a bankruptcy case pending in the same court. The Court's holding, however, is not so broad. The Court holds only that the automatic stay does not apply in the specific circumstances of this case.

### III. CONCLUSION

For the foregoing reasons, the Order is AFFIRMED.

**SO ORDERED.**

Dated: August 28, 2015
Central Islip, New York

/s/ JMA
JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE